OPINION
On February 5, 2000, Appellant was stopped by the Ohio State Highway Patrol for failing to signal a turn.
A friend of Appellant's, Steven Garrett, who had been following him was also stopped at the same time.
Both Appellant and Mr. Garrett, and their passengers, exited their vehicles before the trooper had come to a complete stop.
Upon observing Appellant, the trooper noticed that Appellant's eyes were blood shot and glassy and his speech was slurred and lethargic. (T. at 3, 9).
The trooper inquired as to whether Appellant had consumed alcohol that evening, to which Appellant stated that he had. (T. at 3, 9).
The trooper administered a horizontal gaze nystagmus test, which detected two out of the possible six clues. (T. at 4, 9).
Appellant was then asked to be seated in the police patrol car so that a portable breathalyzer test could be administered. (T. at 4, 10).
Prior to placing Appellant in the patrol car, the trooper conducted a pat-down search of Appellant which revealed an oval or oblong, hard metallic object in his front, left pants pocket. (T. at 4, 10-11, 27-28).
Upon inquiry, Appellant stated that the object was a pill bottle. (T. at 4, 11).
When asked what said bottle contained, Appellant stated that same contained diet pills and ibuprofen. (T. at 4, 11).
When the trooper asked to see the pill bottle, Appellant removed the bottle from his pocket and handed it to the trooper. (T. at 5, 12).
Upon opening the pill container, the trooper found three small plastic wrappers: two appearing to contain pills and one appearing to contain a white powder-like substance. (T. at 12).
The trooper seized said substances and arrested Appellant for suspicion of possession of controlled substances.
Chemical field tests revealed the white powder-like substance to be cocaine and the pills to be prescription drugs for which Appellant did not have a prescription.
Appellant was indicted on one count of possession of cocaine and one count of possession of a prescription medication not contained in the original container, violations of R.C. § 2925.11.
On July 7, 2000, Appellant filed a Motion to Suppress evidence seized as a result of the search.
By Journal Entry dated August 4, 2000, the trial court overruled Appellant's motion to suppress.
It is from this decision that Appellant files the instant appeal, assigning the following error:
 ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE OBTAINED FROM THE SEARCH OF APPELLANT'S PERSON.
Appellant, in his sole assignment of error, argues that the trial court erred in granting appellee's Motion to Suppress. While both parties concur that the initial stop of appellee for failure to signal was legal, appellant contends that the subsequent pat-down search and seizure of contraband were a violation of his constitutional rights. We agree.
There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning (1982)1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v.Guysinger (1993) 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams (1993),86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v Curry (1994), 95 Ohio App.3d 93, 96, State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908, and Statev. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996), 116 S. Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."
Both the Fourth Amendment to the United States Constitution and ArticleI, Sec. 14 of the Ohio Constitution prohibit unreasonable searches and seizures.
Under Terry v. Ohio (1968), 392 U.S. 1, once, as here, an investigatory stop of a person has been completed, an officer may conduct a limited pat-down search for weapons where he has reason to believe that he is dealing with an armed and dangerous individual, based on the specific reasonable inferences which he is entitled to draw from the facts of the case." Terry, supra. at 26. See also State V. Bobo (1988),37 Ohio St.3d 177. The driver of a motor vehicle may be subjected to a brief Terry pat-down search for weapons where the detaining officer has a lawful reason to detain said driver in a patrol car. State v. Evans (1993), 67 Ohio St.3d 405, syllabus.
As is stated above, appellant does not challenge the initial stop for failure to signal. Since appellant appeared to be exhibiting indicia of intoxication, the trooper had a lawful reason for detaining appellant in the police patrol car and, therefore, for subjecting him to a Terry
pat-down prior to placing him in the patrol car. See Evans, supra.
In order to conduct a valid pat-down search, an officer must have a reasonable belief, based upon his observations of the suspect's behavior and the reasonable inferences drawn therefrom in light of his experience, that criminal activity might be afoot and that the suspect might be armed and dangerous. Terry v. Ohio (1968), 392 U.S. 1. "A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." State v. Andrews (1991), 57 Ohio St.3d 86, 88. As the United States Supreme Court noted in Terry, "it would be unreasonable to require that police officers take unnecessary risks in the performance of their duties." Terry at 23.
Appellant argues that the trooper had no reason to believe that the object he felt in Appellant's pocket during the pat-down search was a weapon and therefore had no reason to seize same.
The trooper stated that he was in fear for his safety because he had two people outside of the vehicles who were approaching him; there were several other people in the area; the stop took place in close proximity to Appellant's residence ; it was dark out; and, he was alone. (T. at 16, 20). The trooper further stated that he thought that the object could have been some type of weapon. (T. at 4, 21, 24).
Appellee argues that Appellant voluntarily told the trooper that the object in his pocket was a pill bottle and that said pill bottle contained prescription medication. (T. at 4-5, 11-12). Appellee further states that Appellant voluntarily removed the pill bottle from his pocket and handed it to the trooper. (T. at 12).
In State v. Evans (1993), 67 Ohio St.3d 405, 415, the Ohio Supreme Court explained that during a Terry stop, "when an officer removes an object that is not a weapon, the proper question to ask is whether that officer reasonably believed, due to the objects `size or density' that it could be a weapon."
In this case, the testimony established that during the purported search of appellant for weapons, the officer felt an oval or oblong, hard metallic object in appellant's pants pocket. There was some evidence that the officer suspected that this object felt like a weapon. (T. at 4, 21, 24). However, once the officer had the Appellant remove the object from his pocket he could see that such was not a weapon but was instead just a pill container. There was simply no justification for the officers to open said container once it was clear that such was not a weapon. Therefore, the evidence confiscated from appellant during this unlawful search is inadmissible as a fruit of an illegal search.
We find the trial court's findings of fact were not supported by competent, credible evidence. The trial court improperly denied appellant's motion to suppress.
Appellant's sole assignment of error is sustained.
For the foregoing reasons, the judgment of the Morgan County Common Pleas Court is hereby reversed and remanded for further proceedings in accordance with this opinion.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Morgan County, Ohio is reversed and remanded. Costs assessed to Appellee.
By Boggins, J. Edwards, P.J. and Gwin, J. concur.